I'm Suzanne Luban. I represent Mr. Dharni. I'd like to reserve three minutes for rebuttal. And I'm very sorry that I was late. So I'd like to address together the issues of the two types of bad character evidence that were admitted in this case. The district court here gave basically carte blanche to the government, unlimited ability to introduce evidence. And the judge said that, well, the defendant is going to testify. So I'd like to – I don't want to constrain the government's desire to put on evidence of motive. So if the defense is going to put a spin on the evidence, then I want to let the government do that, too. First of all, please address what the standard of review of this court is in reviewing, critically or affirmatively, the actions of the district court. Well, it's abuse of discretion for the admission of evidence that is under 404B. And in this case, the judge – he went through what he considered to be a 403 analysis. But in that analysis, only considered contrary to all the cases that address old chiefs, specifically how the judge is supposed to analyze prejudicial evidence in the context of the entire case, only considered with regard to the drug use evidence, the drug addiction and excessive references to my clients using methamphetamine 100 times with the arsonist, that that seemed irrelevant. But then he drew in the, I would concede, somewhat relevant issue of showing the relationship between those two people, Mr. Duran and my client. And with regard to the financial evidence, the government felt that it would be prejudicial to the government not to allow the extensive use of this type of evidence for motive and never considered any prejudice that the jury might feel toward my client for his ill treatment, callous treatment, really, of these individual creditors and his dishonesty to the state tax collection agency, to his partners, and the kind of emotional testimony that came in when those two, the contractor, Mr. I'm blanking on his name. Poor Mr. Rodart. There you go. That's right. Poor Mr. Rodart and the doctor, the dentist partner who came in to say that basically the lights were turned out in the store that he had been pouring all this money into and he had no idea the doors were locked and he was never told. The judge never considered the potential prejudice of that type of evidence. Was there an offer by the defense to limit the testimony to simply saying the man doesn't pay his bills to me and I know he needs the money, or he tells me he doesn't have any money? Absolutely. Well, the government had a summary witness who testified I think three times in this trial, definitely at least twice, an accountant who worked for the government who analyzed all of his finances. And so in addition to the testimony from the person from each bank or each lender and each of the partners, well, one of the partners and Mr. Rodart, all of these persons who were harmed by my client's financially irresponsible decisions, they also had the summary witness, and that was known because there was a witness list. And so when the judge ruled that the government could put on unlimited evidence of the financial issues, the defense counsel said, well, then could we limit the number of witnesses who are going to testify about this? And actually, when you look at the record, you can realize that only the financial summary witness was necessary and only about a quarter of her testimony was necessary to do what Your Honor just said, to lay out. These are all his debts, and on this date he owed these amounts, but then instead he spent money on his pool. But what the government did is said, the prosecutor said, we are just going to have a very few witnesses testify about this. It is really going to be limited. And then went on and put ten witnesses to repeatedly hammer to the jury not only how crushing the financial situation was becoming, which was the stated purpose, but aggressively putting on with a scornful tone. And you can't always get the tone from reading the page, but it's pretty clear in this case when Mr. Lapham goes through the direct testimony with the summary witness about the pool. And so she says, $162,000 for one pool? And she says, yes, it was a really nice pool. And there's, you know, an interchange that's going on that's clearly disdainful and inviting the jury to have a very negative opinion of my client, which I'm sure did happen. I'm sure was the result of this. And so focus my mind on your argument. Again, the basis of your argument is it's a standard is abuse of discretion. The trial judge abused it by disregarding certain elements, which should have gone into the exercise of his discretion. What were those elements? The prejudice to the defense. Basically, the judge never considers the prejudice to the defense. Why do you say he never considered it? Well, he states in his ruling that on each of the two issues, the reason why he might have considered excluding the drug evidence is that it seems irrelevant. But then he quotes all these cases, McCoy, Say, Jones, Mathis, which are all drug cases, which are all cases where the prior criminal this is about the drug use, the prior criminal connection between a person who's involved in the case, a co-defendant or a co-conspirator. But what you're saying is he doesn't say, I see that it's probative, but the prejudicial value outweighs the probative value. He didn't say that. Not only I'm not talking about magic words here, really. I'm saying that the judge didn't consider that it would be that it would render my client despicable in the eyes of the jury to put in all of this excessive amounts of repetitive hammering. How do you know he didn't consider? Well, because he only states the basis for his ruling. In other words, because he didn't say I have considered the prejudicial value and it is outweighed by the probative value. Yes. So by omission, he didn't consider. And what you're saying is when a judge doesn't state the prejudicial weighing, then that is an abuse of discretion. Well, if he states I'm weighing this and I'm weighing that, then I think I just want to get your record. That's not exactly my argument. I'm not saying that he didn't engage in a way he engaged in a way and he declined to consider prejudice to the defendant. And you say he declined to consider prejudice because he said nothing about considering prejudice. From that, I glean that you want us to adopt a rule that if a trial judge does not specifically say I am considering prejudice, he has not considered he or she has not considered. The cases that rule that talk about that are cases where the judge never engaged in a weighing on the record. We have to take this judge at his word when he says I'm considering that the government would be denied the ability to fully present its motive evidence. And so I'm going to allow unlimited use of this because the defendant is going to put a spin on the evidence and because I want to allow the government to introduce the relationship between these two people. I wanted to point out what I was saying about those cases. I'm sorry, I don't remember. Did the defendant testify? Yes, he did. So would it have been appropriate then if the judge had permitted the testimony in rebuttal rather than in the government's case in chief? The testimony about his drug abuse? His drug abuse and his financial dealings. He never said I don't know this man. In fact, Mr. Duran himself testified, and this is an important point for the admissibility of that evidence, is under old chief when there is alternative evidence to basically make the same point. These people knew each other for 15 years. They had been together more than 100 times, spending time together, smoking methamphetamine, drinking, and playing video games for days on end. Those are the pieces of the evidence that were not necessary to show the relationship. These people were related by marriage, and they spent a lot of time together. I thought I remembered that the judge expressly said, though, that he found the evidence of the drug use compelling or probative because the use of drugs together showed a level of trust in each other that playing video games and drinking and being cousins doesn't show. Didn't he say that? He did say that. And each one of the cases that he relies on, the criminal relationship between the two people that is the prior relationship that there was evidence allowed on, each one of those cases, it's a similar type of criminal act. It's a drug case. It's a drug case, so they bought drugs together. Or it's a purchase of stolen goods, and they had committed burglaries and purchased stolen goods together. Isn't the point a little different here? That is, regardless of the criminal activity being charged here, that the fact that they had engaged in illicit activity together previously is probative of a level of trust between them that drinking and video games and being cousins isn't, whether it was committing a robbery or using drugs or whatever. Two responses to that. One, we don't say that it wasn't relevant. We never get to the 403 analysis if it isn't relevant. 403 analyzes whether there's unfair prejudice caused by already relevant evidence. So we concede there was a relationship there. It was shown by this. It was also shown by other things. But also in this situation, and this goes to both the financial and the drug evidence, it's not only the judge's ruling that we're challenging. The way the evidence was presented, I submit, is a violation not only of Rule 403, but due process. The extensive and repetitive and hammering and scornful tone of all of this evidence. And so with regard to the drug evidence, yes, they could have put in that he smoked methamphetamine with this guy. I suppose that would have accomplished what the judge wanted to show. They do illegal things together, so they trust about illegal things. But instead, they put in a hundred times they smoked methamphetamine day and night. This is while his businesses were crumbling. This is a man who has a small child who's leaving his wife at home with his small child and his businesses to collapse. Was it really a hundred times? That's what they said. They said that. And so that would be a hundred several days, a hundred periods of several days over a period of years. And to show that, to say that that was necessary and more probative, you know, so that, say, it wasn't substantially more prejudicial than probative, when you could have established the same illegal nature of their relationship without portraying this guy as. . . Did the defense offer to stipulate to some limited evidence on this? Did you say, we'll stipulate that they smoked methamphetamine several times? No. The defense didn't offer to do that. And I don't know if Your Honor has ever been in Judge Garcia's court,  and he was, I think, very. . . You've answered my question. Okay. No, he didn't offer to do that. So, again, all the cases that are about the criminal relationship, they're all about the same type of conduct. And in each case, it would be relevant, just like it was somewhat relevant in this case.  And even, what's the drug case where, I can't remember which one it is, where it's a drug case and it was personal drug use, and it was still found, even though it was a drug case, that that was overwhelmingly prejudicial, substantially more prejudicial than probative. So with regard, again, to the financial dealings, it's not. . . Clearly, financial trouble is relevant to motive to commit arson in a business case. And I don't know what the regulation offer is to the extent of financial trouble. The judge. . . I mean, as I said before, the defense counsel did say we would ask for it to be limited, to the court to limit the number of witnesses that can testify about this. And he also said. . . I'm sorry. He did say from the very beginning. . . At the beginning when he said this shouldn't be admitted in the way it's going to be presented by the government, we concede. . . We will stand up there in opening statement. And I think he even did say this man was in terrible financial situation. We don't oppose that. We stipulate that he was in financial trouble. And that was stated. Where was that stipulation offered? It wasn't a formal stipulation that would be read to the jury. The defense counsel was saying, Your Honor, we concede that he was in financial trouble. We do not oppose that. Do you have a record cite on that? I could send it to you. I don't have it on the top of my head. But it would be in the pages that I have copied in the excerpts of record where they're arguing the limiting motion. Let's look at the whole excerpt of the record. Was it in the opening statement? Did you try the case? No. Otherwise, I would know that. But. . . It's helpful to be familiar with the record when these questions are asked. I'm sorry, Your Honor. Yes. And so if I have. . . I don't think I have any more time to move on to the next issue. Thank you very much. Thank you. Good morning, Your Honors. My name is Steve Lapham. I'm the assistant U.S. attorney who handled the case in the court below. And what I'd like to do first is address, with respect to the 404B evidence, first what the judge did, and then go into the analysis and why the judge was right and the defense was wrong on those issues. First of all, the judge, I'm sure most of you are familiar with Judge Garcia. To my knowledge, I think he's been on the federal bench for 27 years, and he was a Superior Court judge before that. He knows very well the balancing that is necessary in 404B-type cases, and he did that balancing here. With respect to the balancing on the drug issue, that's contained at paragraph, at page 10 of the excerpt of record, and also page 10 of the transcript, coincidentally. He said, secondly, its probative value must be substantially outweighed by its prejudicial effect, and that was with reference to the drugs. He had done the same balancing two pages ago. Is that the correct test? Must be substantially outweighed? That is correct. Or must it be outweighed? No, it must be substantially outweighed. And that's, I'll discuss that in a minute. And then with respect to the financial evidence, that's contained at page 8 of the excerpt of record. Again, he said, the probative value of the defendant's dire financial straits as a motive to commit arson for insurance fraud is very great and it outweighs any unfair prejudice. So he did do the balancing he was required to do. Now, was that balancing correct? Well, I don't think there's any real question that the balancing was correct with respect to the issues. That is, I mean, let's just assume that it was. It's relevant. It was the volume of evidence that was permitted in. If one witness or two or three witnesses can establish a fact for the government, why put in ten? And if, you know, two minutes or three minutes of testimony with respect to prior drug use can establish the relevancy in the relationship between the two men, why talk about it for four hours? That's the problem that I'm having with this. Well, let me address that then. With respect to the drug use, it was very limited testimony. There were only, I believe, two witnesses who testified about the drug use. That was Duran himself, and that was a very short portion of the transcript. Nobody dwelled on that in his examination. And I believe one of the other two women, it was either Tiffany Martinez or Rosa Duran herself, testified about the drug use. And then, of course, Darney admitted it, and that was brought out in the agent's testimony. But they were all very short snippets. Nobody dwelled on the drug usage in the testimony. But didn't Duran talk about the extent of the drug use and, I mean, a hundred times over the course of, you know, many, many months and years and every day? He was asked one question, how often did you get together with Mr. Darney? And that answer was a hundred times over a 15-year period. That was the extent of that testimony.  Now, with respect to the financial evidence, yes, we had a summary witness. That summary witness can only summarize what's been presented at trial. And this was a highly complex set of financial circumstances. The defendant had five separate restaurants that we had to account for, with different issues relating to each one. So, for instance, and these are not things that a summary witness can testify to. We did get stipulations with the defense with respect to things like bank records, so that the government would not have to lay a foundation for certain bank records. But the summary witness can't interpret things like partnership agreements, when she sees, for instance, a document that shows that Darney was sued and had to pay a certain sum of money, she can't say why that suit came about, what was behind that. We have to put on actual witnesses to testify about it, and there was no indication from the defense that they were interested in stipulating to anything like that. So, for instance, with respect to the Quesno's partnerships, we had to put on one of the partners to say, there was an agreement here that we would get 3 percent per quarter, I believe it was, and that Darney was responsible for paying that to us, and he never paid it. That's not something our financial summary witness could have testified to, under the rules of evidence. There was a $37,000 electrical bill that was due in Owing for back electricity payments for one of the other Quesno's. That's not something that the summary witness could have testified about, because that involved additional evidence about how Darney tried to pay that off and why he had to pay it off, why he chose to pay that bill rather than other bills. The answer to that related to testimony from Quesno's corporate, which showed that he was about to be terminated. They were going to take his franchise away if he didn't take care of this little financial obligation. So he was basically the trial was talking about one thing after another, Darney robbing Peter to pay Paul, scrambling to try and make payments here or there. And I know it sounds like the government dwelled on this to an excessive degree, but it was necessary to put all these witnesses on to bring out all this testimony. Mr. Rodarte could not have, we couldn't have gotten his evidence in without his personal testimony under the rules of evidence. But why did he have to be asked about how these financial failings of the defendant affected his life? Why not just say he owed me this money, he paid me, he didn't pay me? Why did he have to go into such detail about how it affected his life? We did not ask that question in his direct testimony. We only asked that question in redirect after he was excoriated on the stand for not tracking down Mr. Darney and suing him, suggesting that he let the lawsuit lapse, that he wasn't that interested in pursuing it, because how hard is it to find a guy that has five restaurants? And Mr. Rodarte said he was absolutely interested and motivated to find him. That's how that came up in redirect, because it had ruined his life. Now, we didn't ask for that testimony. We simply asked the question. We didn't know that the witness is going to blurt out that it had ruined his life. We were expecting him to say that he was well-motivated to find Mr. Darney, and that would have rebutted the implication in the cross-examination that he was not. So, and I think it's also important that although the defendant, the defense counsel uses a lot of adjectives in the brief about how we, words like scurrilous and we demonized Mr. Darney, those are her adjectives, not any adjectives that ever appeared at trial. As we stand here today, there are no quotations that I've seen in the record from the closing argument or in the so-called withering cross-examination that indicate that we called Mr. Darney any of those names. We merely pointed out the facts. And I'd like to return to the drugs for a moment. Basically, what I understand the defense argument to be is that we should have sanitized this in some fashion. They don't question the relevance of the drugs anymore. What they say is, well, there was an easier way to do it. We had all the arrows in our quiver. We didn't have to use all of them. But there's a, I think it's in the old chief case, what the Supreme Court has said is the government is not required to sanitize the evidence and put on a different case than the facts actually merit. But there's a material difference between saying that Mr. Darney and Mr. Duran drank some beers together and played video games and saying that they did drugs. You know, I have a brother-in-law that I have had beer with and drink, play basketball with, and we get together quite a bit. And I would never dream of asking him to commit a federal felony. And the reason is because I'm sure he wouldn't, and he would probably go to my employer first and the FBI second and let them know what I just asked him to do. But this is materially different. This is not a guy that Mr. Darney just had a few beers with. It's a guy who he knew was not beneath committing crimes. On the balancing of the prejudicial versus probative effect, and also taking into consideration the judge's occupation or preoccupation with the extent of it, of proof, do we have any guidelines from any of our cases telling us when a trial judge abuses his or her discretion, even after he's considered or she's considered the prejudicial effect? I think I'll retreat to Justice Potter's comment that we know it when we see it. It's about as good as we can do? I've never found that very helpful. I agree. I think that's about as good as we can do, because every factual situation is unique. No two cases are alike, much as we'd like to try and find the case that's exactly on point. Here we just look at why the government needed to get that evidence in. I think that's conceded. And the question is, did it inflame the jury? Is this the type of evidence? In other words, was there a danger that this jury would have convicted Mr. Darney for the serious crime of arson? Are you giving us a pun when you say inflame the jury in an arson case? I wish I were that quick. But the danger here is really that the jury will be diverted from their main task, which is to convict or find this individual innocent or guilty of an arson, and they'll say, you know what, we just don't like drug dealers. And I think there's very little chance of that. The jury knew what their task was here. I think the cases where we see reversal, we know it when we see it, is when the crime for which the defendant is on trial is relatively minor, and the 404B evidence is relatively harsh. A lot of people don't like child molesters. I mean, they would probably convict you of any crime littering on the street if they knew you were a child molester. That's a situation where clearly the 404B evidence would substantially outweigh the probative value of that evidence. But here there's a much closer connection to what we're talking about. You don't make a harmless error argument, do you? Well, I hope we don't have to get there, but I think harmless error analysis does apply. But my question was, you don't make that argument. I don't believe we made it on the drug and financial issues. And I see that I'm starting to run out of time, so I wanted to make sure I don't give short shrift to the other two issues in the case. The confrontation clause issue, I think that issue goes away at this point, because the defendant had full and fair opportunity to explore those issues. He brought Mr. Duran back on the stand and could have asked him the questions. And the judge never made any judgment that limited, as the defense counsel says, that limited what he could go into. He simply chose not, for whatever reason, to go into it. Oh, and incidentally, before I forget, on the financial issue, going back to that for a moment, I think it bears repeating that the original argument to the judge in the district court was that the financial motive or financial evidence wasn't relevant because of the Mitchell case, that poverty is not ordinarily admissible. That's what the judge went off on. He was never given any of these arguments that it should be stricken because people will think he's a despicable character. You know, the judge isn't a mind reader. He can't tell what the defense counsel is thinking. These arguments have all been raised in the appellate court. And finally, I think the defendant has conceded that the third issue, the sentencing issue, is not appropriate for a panel review but needs to be heard en banc. Thank you. I thank you very much. We'll give you a minute for rebuttal. So although the prosecutor didn't use some of the vocabulary that I use in my brief, he did say, so who will pay for that, the debt fairy? And he said, well, so he didn't bother to shop for lower interest rates, and phrasing like that that went throughout the case. So although he didn't call him despicable and he didn't call him a spendthrift or shiftless, the tone and the repetitive nature and the specific terms and questions that were used did evoke those characterizations of my client, and that's why I say them in my brief. There were four witnesses to the drug use, not two, the girlfriend, the sister, agent who interviewed my client who talked about my client telling him that he had used drugs, and Mr. Duran, as well as my client was asked about it. And I wanted to say that at ER-5 is where Mr. Chase says we are conceding his financial difficulty. And as Mr. Lapham said, that they did stipulate to bank records which set forth that. And then as to the confrontation clause issue, it exacerbated the prejudice caused by admitting all the bad acts of my client, because here on the one hand you've got tons of evidence about how terrible and despicable this defendant is, but yet the witness who, you know, this really was a circumstantial case except for the testimony of Richard Duran and his two backup women that he brought in to testify that he had had a conversation with my client. So where is the credibility contest? The credibility of Mr. Duran was not allowed to be tested fully on cross-examination because the judge refused to allow Mr. Chase, the defense counsel, to draw the connection between the burglary that he had planned that he conspired with his sister to commit and the possibility that he had manufactured, blaming my client, manufactured a way to frame my client and brought in his sister and his girlfriend to support that. Had he been convicted of the burglary? Yes. And so he was allowed to bring in the burglary, but he was not allowed to. And Mr. Chase specifically argued, Your Honor is allowing all this bad character evidence that's going to make my client look really bad. Shouldn't I be allowed to show bad character as to this guy? He showed, well, one thing isn't the other. It wasn't allowed in as character evidence. It was allowed in as motive evidence and allowed as planning evidence. But as to Duran, if the judge allowed in the fact that he had been convicted for a burglary, he allowed in that Duran was a felon. I misspoke. What for? The importance of it was the criminal relationship, and it was, he said, you're allowing in the criminal relationship between Mr. Duran and my client through this drug use evidence, but you're not allowing me to show the criminal relationship between Rosie Duran, the sister, and Mr. Duran that would have shown the likelihood that they cooked up their story to corroborate Mr. Duran's statement. That's a stretch. All right. Well, there was evidence that the agent had said to Mr. Duran, you are going to need backup for this. If this is your story, and that he had come in and said, we know you were hired by Mr. Darney, that that was the, that the agent was the source of the very first mention of my client as being the,        I think it's time. You have two more minutes left. We'll take care of that. You've got your time. Thank you very much. Thank you very much, Your Honor. The case of the United States v. Durney is, will be submitted.
judges: Hug, Bea, Edmunds